**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **EMMANUEL GONZALEZ-SANCHEZ,** | **CASE NO. 1:11CV0553** |
| **Plaintiff,** | **JUDGE BENITA Y. PEARSON** |
| v. | |
| **MICHAEL J. ASTRUE,** | **MAGISTRATE JUDGE GREG WHITE** |
| **Commissioner of Social Security,** | |
| **Defendant.** | **REPORT AND RECOMMENDATION** |

Plaintiff Emmanuel Gonzalez-Sanchez ("Plaintiff") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381, *et seq*.[1]  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be vacated and remanded for further proceedings consistent with this Report and Recommendation.

**I. Procedural History**

On March 6, 2006, Plaintiff filed an application for SSI alleging a disability onset date of July 9, 2005, and claiming that he was disabled due to borderline intellectual functioning, anxiety related disorders, and schizophrenic, paranoid and other psychotic disorders. (Tr. 65, 66.) His application was denied both initially and upon reconsideration. He timely requested an administrative hearing.

On November 17, 2009, an Administrative Law Judge ("ALJ") held a hearing during

---

[1]Plaintiff-Sanchez also filed an application for childhood disability under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(C), but he does not challenge the ALJ's decision as to that claim. (Doc. No. 13 at 2, fn. 1.)

which Plaintiff, represented by counsel, testified. Bruce Holderead, an impartial Vocational Expert ("VE"), also testified. In addition, a Spanish interpreter assisted the claimant. On December 15, 2009, the ALJ found Plaintiff was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age 21 at the time of his administrative hearing, Plaintiff is a "younger" person under social security regulations. *See* 20 C.F.R. § 416.963 (Tr. 33). He completed high school in 2006 in Puerto Rico while taking special education classes.[2] (Tr. 344, 352, 373.) He took both English and Spanish classes, receiving mostly A's and B's. (Tr. 177.)

### *Medical Evidence Pertaining to Mental Health*

In July, 2006, Plaintiff moved to Lorain, Ohio to live with relatives. (Tr. 281.) Shortly thereafter, he visited the Nord Center for psychiatric help. (Tr. 339.) The initial Nord diagnostic assessment indicated, as follows:

> Client was anxious, tense throughout intake. At one point he stated that he did not like homosexuals even though they are after him all the time. Apparently, client has a fixed delusion that homosexual men are after him. Family has validated that delusion has no reality base.

(Tr. 344.) Medical records from Puerto Rico indicate that Plaintiff saw a psychiatrist on a regular basis, and was diagnosed as suffering from schizophrenia and mild mental retardation.[3] (Tr. 263-266; 268-272.) The Puerto Rican records also note that Plaintiff reported having auditory hallucinations and seeing illusions. *Id.* At the time of the Nord Center interview,

---

[2]From a high school report card dated April 26, 2006, Plaintiff received only first semester grades his senior year (2005-2006). (Tr. 177.)

[3]A psychological report completed by Blanca Cruz-Soto, M.D., in Spanish, is included in the record. (Tr. 263-266.) The Court notes that Plaintiff visited Dr. Cruz-Soto five times beginning February 16, 2006. (Tr. 263.)

2

Plaintiff was taking Paxil, prescribed by Dr. Cruz-Soto.[4] At this consultation, Plaintiff was diagnosed with "Schizophrenia, Paranoid Type by history, R/O Generalized Anxiety Disorder, Mild Mental Retardation, Chronic back pain due to scoliosis." (Tr. 353.) He was referred for further psychiatric and vocational evaluations. (Tr. 354.)

On August 23, 2006, Nord Center psychiatrist Enrique Huerta, M.D., evaluated Plaintiff, diagnosing generalized anxiety disorder, borderline intellectual functioning, and personality disorder NOS. (Tr. 281-282.) Dr. Huerta prescribed Paxil and Atarax. (Tr. 282.) He also completed a mental residual functional capacity ("RFC") assessment finding Plaintiff to be markedly limited in the following abilities:

- carrying out detailed instructions
- maintaining attention and concentration for extended periods
- performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances
- sustaining an ordinary routine without special supervision
- working in coordination with or proximity to others without being distracted by them
- making simple work-related decisions
- completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods
- accepting instructions and responding appropriately to criticism from supervisors
- getting along with coworkers or peers without distracting them or exhibiting behavioral extremes
- responding appropriately to changes in the work setting
- being aware of normal hazards and taking appropriate precautions
- setting realistic goals or making plans independently of others.

(Tr. 382.) Dr. Huerta found Plaintiff to be moderately limited as follows:

- remembering locations and work-like procedures
- understanding and remembering very short and simple instructions
- carrying out very short and simple instructions
- interacting appropriately with the general public
- asking simple questions or requesting assistance
- maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness
- traveling in unfamiliar places or using public transportation

(Tr. 382.) Dr. Huerta determined Plaintiff to be unemployable for a period between eight and eleven months. (Tr. 383.)

---

[4]Dr. Cruz-Soto had also prescribed Haldol and Cogentin, but Plaintiff did not take these medications.

3

In September, 2006, Plaintiff participated at the Gathering Hope House ("GHH"), a community-based facility offering educational and life-skill programs, as well as social activities, to individuals with mental impairments. (Tr. 334.) Plaintiff was excited to be given the opportunity to take computer classes and to volunteer in the facility's kitchen. *Id.* A GHH staff member later noted that Plaintiff was happy and that he was helping in the kitchen. (Tr. 332.)

Plaintiff had follow-up visits with Dr. Huerta on September 25, 2006, and December 18, 2006, during which Plaintiff had a blunted effect, but he denied depression, suicidal ideation, hallucinations, delusions, or anxiety. (Tr. 326, 333.)

On November 13, 2006, non-examining state psychologist Alice Chambly, Psy.D., completed a psychiatric review technique form and a mental RFC assessment. (Tr. 293-309.) Regarding functional limitations, Dr. Chambly found that Plaintiff had mild restrictions in his activities of daily living; marked difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and, no episodes of decompensation. (Tr. 303.) Dr. Chambly's mental RFC assessment indicated that Plaintiff was markedly limited in the ability to understand, remember and carry out detailed instructions. (Tr. 307.) She found Plaintiff to be moderately limited in the ability to understand, remember, and carry out very short and simple instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and, to respond appropriately to changes in the work setting. (Tr. 307-308.) In completing the narrative portion of the assessment, Dr. Chambly determined: "The claimant is able to remember, understand, and carry out job instructions not involving complex, detailed tasks. He is able to relate to others, including coworkers, solely on a superficial basis. He is able to perform work not involving high levels of stress." (Tr. 309.)

On December 26, 2006, neurologist Dariush Saghafi, M.D., reported that Plaintiff has chronic pruritis attributed to anxiety, but no significant neurological deficits. (Tr. 312-314.) In the doctor's report, under "history of present illness," he noted that Plaintiff has "the mind of an 8 year old" and that he does not "retain information or follow instructions." (Tr. 312.) The doctor concluded, however, that Plaintiff is able to "understand the environment and his peers as well as communicate satisfactorily," and that he is "able to travel independently." (Tr. 314.)

On March 12, 2007, Dr. Huerta diagnosed Plaintiff with schizoaffective and bipolar disorders. (Tr. 282.) This assessment was written on Dr. Huerta's August 25, 2006 treatment notes. *Id*. He dated and initialed the notation. *Id.* The record, however, does not reflect any other information about this diagnosis.

On October 25, 2007, a state agency examining psychologist, David V. House, Ph.D., performed an evaluation. (Tr. 372-379.) At that time, Plaintiff was not taking any medication. (Tr. 374.) Dr. House noted that Plaintiff's concentration and attention were "at least moderately and more likely markedly limited." (Tr. 376.) Plaintiff did not require supervision in the management of his daily activities, but would require supervision in the handling of financial matters. (Tr. 379.) Dr. House noted that Plaintiff's "overall level of functioning is at a reduced level of efficiency." *Id*. On the Wechsler Adult Intelligence Scale, Plaintiff's I.Q. scores were in the low average to average range. (Tr. 378.) Dr. House diagnosed Plaintiff with anxiety disorder, NOS, learning disorder, NOS, bereavement, and borderline intellectual functioning. *Id*. Dr. House noted psychosocial stressors that include "mov[ing] from Puerto Rico to Northern Ohio in the last year, unemployment, along with anxiety issues and some learning difficulties that appear mild." (Tr. 379.)

On November 26, 2007, state reviewing psychologist, Carl Tishler, Ph.D., reviewed Plaintiff's new allegation of concentration problems as assessed by Dr. House.[5] (Tr. 380.) Dr. Tishler noted that the current psychology exam did not show Plaintiff "worsening" from the

---

[5]Dr. Tishler also affirms a November 13, 2007 opinion. However, the record does not contain such an assessment. Dr. Tishler may be affirming Dr. Chambly's assessment dated November 13, 2006.

5

initial filing. (Tr. 380.) He also noted that Plaintiff was able to ride the bus, that he owned a computer (which was stolen), indicating at least simple computer skills, he was able to do simple chores and prepare simple meals. *Id*. Dr. Tishler also indicated that there was no evidence of schizophrenia. *Id.*

From approximately January, 2007, through January, 2008, Plaintiff attended therapy sessions or communicated with case workers at the Nord Center numerous times. (Tr. 392-468.) In May, 2007, with the understanding that he needed to get a job so he could pay the bills, GHH workers helped him move into his own apartment. (Tr. 420, 422, 424.) In December, 2007, with the help of a Nord caseworker, Plaintiff began working at McDonald's. (Tr. 458.) Due to his work schedule, however, Plaintiff was unable to attend his medical and vocational appointments at the Nord Center. (Tr. 450.) On February 5, 2008, his case was closed. *Id*.

In May, 2008, Plaintiff was reinstated as a client at the Nord Center based upon symptoms of anxiety, irritability, impulsive behavior, and difficulty staying on task. (Tr. 443.) He agreed to comply with treatment and to seek employment. (Tr. 448.)

### *Hearing Testimony*

At the November 17, 2009, hearing, Plaintiff testified as follows:

- He is not able to work due to his back surgery thirteen years ago, and because he cannot carry heavy items. (Tr. 43, 45.)

- He sees a counselor, who helps him manage his money. (Tr. 43-44.)

- He enjoys electronics and playing adventure and online games. (Tr. 44.) He has no difficulty concentrating while playing the games. *Id*. He also likes to go out with people and talk with friends. *Id*.

- He has been living on his own for about a year. (Tr. 45.)

- His back hurts when he bends while cleaning. *Id*. He is not going to physical therapy. (Tr. 45-46.)

- He worked at McDonald's from approximately July, 2008, to February, 2009. (Tr. 46-47.) A worker at the Nord Center helped him find this job. *Id*. He was a cook, but also did other things.[6] *Id*. He was able to complete his work timely. *Id*. He later testified that he worked very slowly and felt overwhelmed by the job.

---

[6] As to the other work he performed at McDonald's, the record is marked "[indiscernible.]" (Tr. 47.)

    (Tr. 48.)

- He stopped working at McDonald's because of pain. (Tr. 47.)

- He previously worked at a different McDonald's, where he was fired for not reporting to work. (Tr. 48.)

- His hands tremble. (Tr. 48.)

- He last heard voices about four weeks before the hearing. (Tr. 42.)

- He sometimes hallucinates and sees white scenes or a black figure, like a shadow. (Tr. 49.) He was on medications, which he does not take any more because he believes the dosage was not sufficient. (Tr. 50.)

- He used to attend church, but stopped after the pastor and other people told him he was not a good person. (Tr. 50, 51.)

- A Nord Center worker occasionally visits him at the apartment. (Tr. 51)

Based upon reported earnings, Plaintiff has no past relevant work. (Tr. 53.) The ALJ posed the following hypothetical to the VE:

> So if we were going to assume a younger individual, who could perform light work with occasional postural activities, at the unskilled level, carrying out one and two-step commands, would there be jobs that such a person could do?

*Id*.

The VE testified that such an individual could work in the following light, unskilled positions: street cleaner, approximately 15,000 positions nationally; machine feeder, approximately 12,000 nationally; electrode cleaner, 10,000 positions nationally. *Id.*

The VE confirmed, after a question from Plaintiff's attorney, that these positions have a GED reasoning level of one. (Tr. 55.) Counsel also elicited that in order to perform these jobs, "a person would have to be able to consistently perform unskilled one and two-step jobs." *Id*. Counsel further questioned whether the occupation of a street cleaner had changed since the DOT classification. (Tr. 56.) The ALJ questioned the relevancy of the inquiry, and allowed counsel to brief the issue. (Tr. 56-57.)

### III. Standard for Disability

A claimant may be entitled to receive SSI benefits when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource

7

limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Plaintiff established medically determinable, severe impairments, due to degenerative disc disease, borderline intellectual functioning, and depression; however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Plaintiff was found to have no past work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light, unskilled work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Plaintiff is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been

8

defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

**Opinion Evidence**

Plaintiff claims the ALJ improperly evaluated the opinions of Drs. Chambly, House and Huerta. Specifically, Plaintiff contends that the ALJ did not give sufficient reasons for disagreeing with the opinions of Drs. House and Huerta. (Doc. No. 13 at 9-11.) Plaintiff also contends that the ALJ erroneously evaluated Dr. Chambly's opinion by ignoring her findings that Plaintiff could not perform high-stress work, could only have superficial social interactions,

9

and was moderately limited in his ability to understand, remember and carry out very short and simple instructions.  (Doc. No. 13 at 7-9.)

The ALJ is charged with a duty to evaluate all of the medical opinions in the record and resolve any conflicts that might appear.  20 C.F.R. § 416.927.  As such, the ALJ will give each opinion the weight deemed appropriate based upon factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether it is consistent with the entire record.  20 C.F.R. § 416.927(d)(2); SSR 96-2p.  It is the responsibility of the ALJ alone, not a reviewing court, to weigh the medical evidence and resolve any conflicts that might appear.  20 C.F.R. § 416.927(d).

Furthermore, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 Fed. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 416.927(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[7]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data,

---

[7] Pursuant to 20 C.F.R. § 416.927(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).  Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them.  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984).  According to 20 C.F.R. § 416.927(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  *Id*.  It is the Commissioner who must make the final decision on the ultimate issue of disability.  *Duncan*, 801 F.2d at 855;  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

      To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.  A court must determine whether or not an ongoing treatment relationship exists at the time the physician's opinion is rendered.  *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 167 Fed. App'x 496, 506 (6th Cir. Feb. 9, 2006) ("[T]he relevant inquiry is ... whether [claimant] had the ongoing relationship with [the physician] at the time he rendered his opinion.... [V]isits to [the physician] after his RFC assessment could not retroactively render him a treating physician at the time of the assessment."); *see also Yamin v. Comm'r of Soc. Sec.*, 67 Fed. App'x 883, 885 (6th Cir. 2003) ("These two examinations did not give [the physician] a long term overview of [the claimant's] condition.").  This is because "the rationale of the treating physician doctrine simply does not apply" where a physician issues an opinion after a single examination.  *Barker v. Shalala*, 40

11

F.3d 789, 794 (6th Cir. 1994).

Opinions from agency medical sources are considered opinion evidence. 20 C.F.R. § 416.927(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii). More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968, at *8 (S.D. Ohio Aug.5, 2009). This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180. Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, as well as the specialization of the physician. *See* 20 C.F.R. § 416.972(d), (f).

The Sixth Circuit, however, has held that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of several examining physicians' opinions over others. *See Kornecky*, 167 Fed. App'x at 508. The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id*.

Furthermore, it is well established that the plaintiff—and not the ALJ—has the burden to produce evidence in support of a disability claim. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280

12

Fed. App'x. 456, 459 (6th Cir. May 29, 2008) (*citing* 20 C.F.R. § 404.1512(a)). *See also Struthers v. Comm'r of Soc. Sec.*, 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416.912, 416.913(d)."); *cf. Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits). *See also Hayes v. Astrue*, 2011 WL 901013, *5 (S.D. Ohio Feb. 14, 2011).

In the instant matter, the ALJ rejected Dr. Huerta's mental RFC assessment that Plaintiff was markedly limited in many areas because Dr. Huerta specified that Plaintiff's symptoms were expected to last less than a year. (Tr. 30, 32.) Moreover, this mental RFC assessment was conducted after Plaintiff's first visit in August, 2006. Dr. Huerta was, therefore, not Plaintiff's treating physician. *See Kornecky*, 167 Fed. App'x at 506. The ALJ properly rejected Dr. Huerta's August 2006 assessment.

Plaintiff further asserts that the ALJ ignored Dr. Huerta's diagnosis dated March 12, 2007, that Plaintiff was schizoaffective and bipolar. (Doc. No. 13 at 11.) As Plaintiff continued to see Dr. Huerta, an on-going treatment relationship was established. Nonetheless, as to the March 12, 2007 diagnosis, Dr. Huerta did not provide any supporting reasons. *See Meece*, 192 Fed. App'x at 560. Furthermore, Plaintiff could have presented an updated RFC from Dr. Huerta. As it is the Plaintiff's burden to present evidence of his disability, the ALJ did not err.

Regarding Dr. House's evaluation, the ALJ noted:

In October 2007, the claimant underwent a mental status and cognitive functioning evaluation by state medical consultant, David V. House, PhD. The claimant described his back surgery as successful, but complained of headaches and "a nerve condition." He stated that he does not take any medication for any of condition [sic] and has never been in a psychiatric hospital or in counseling.

13

> The claimant reported that he was working, but left his job because he did not like it. When asked why he was asking for disability the claimant responded that people were helping him look for a job but it was difficult to find employment. On examination the claimant's appearance and hygiene was adequate and he ambulated without difficulty. He had "some delay" in his speech but he did not show psychotic behavior or loose association. He had "some" anxiety and his hands were shaking and complained of panic attacks. In terms of auditory hallucinations the claimant stated that he used to hear his mother talking to him after she died. With regard to visual hallucinations he stated that he saw angels three years ago. Dr. House noted that the claimant "has had some rather unusual experiences" but it not psychotic. The claimant's concentration and attention was moderately to markedly limited. He showed poor memory and was not able to perform serial seven subtractions. But his fund of knowledge was fair. The claimant's judgment and insight was determined to be moderately limited. He was judged to be independent with his activities of daily living but would need guidance with financial affairs. The claimant was administered the Wechsler Adult Intelligence Scale-III test which revealed a verbal IQ of 73, performance IQ of 75 and full scale of 72 which placed him in the borderline range of adult intellectual functioning. Dr. House diagnosed the claimant with anxiety disorder, a learning disorder, not otherwise specified, and bereavement. He also stated the claimant is a borderline intellectual functioning individual, Exhibit 19F.

(Tr. 30-31.)

The ALJ also addressed Dr. Chambly's assessment of Plaintiff's limitations as follows:

> . . . the claimant has mild limitations is [sic] terms of his activities of daily living, moderate limitations in the ability to remember and carry out simple instructions and markedly limited in remembering and carrying out detailed instructions, Exhibits 8F, 9F. The combination of these opinions[8] in addition to the claimant's borderline intellectual functioning diagnosis precludes[9] the claimant to unskilled work. However, there is no evidence that the claimant is disabled from performing all work.

(Tr. 32.)

Based upon these opinions, the ALJ assessed Plaintiff's RFC as follows:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that he is limited to occasional postural activities including crouching, crawling, stooping and kneeling. In addition the claimant can perform unskilled work only. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a standard basis) to understand, carry out, and remember simple instructions; to respond

---

[8]The ALJ also considered evidence from William Mirando, M.D., who treated Plaintiff for acne. (Tr. 32.) Dr. Mirando was asked whether Plaintiff had any work limitations, either physical or psychological limitations, to which he responded, "none." *Id*.

[9]The ALJ is not precluding Plaintiff from unskilled work, but actually limiting him to such.

>   appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting under SSR 85-15.

(Tr. 28.)

Here, the ALJ did not weigh the state examining physician's opinions. Furthermore, it appears the ALJ, without explanation, rejected Dr. House's opinion that Plaintiff's concentration and attention was markedly limited due to anxiety. Somewhat consistent with Dr. House's opinion, Dr. Chambly found Plaintiff to be moderately limited in maintaining attention and concentration for extended periods. (Tr. 307.) In calculating the RFC, however, the ALJ did not exclude jobs requiring concentration or explain why she did not do so.

Without any meaningful analysis, the Court cannot discern how the ALJ calculated the RFC. It is clear that the ALJ relied on Drs. House and Chambly's opinions to find that Plaintiff was able to perform unskilled work requiring simple instructions, but the ALJ did not address Plaintiff's anxiety and lack of concentration issues. Because the ALJ did not provide an analysis that is sufficiently specific, Plaintiff's argument that the ALJ failed to properly articulate the weight given to the state agency doctors is well-taken. The Court is unable to trace the path of the ALJ's reasoning as her analysis was insufficient under the Administration's procedural rules.

Rather than focusing on the ALJ's opinion, the Commissioner cites portions of the medical record that potentially support the ALJ. (Doc. No. 16 at 10-13.) However, the Commissioner cannot cure a deficient opinion by offering explanations never offered by the ALJ. As this Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's 'post hoc rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27–28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996) ("we cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986) (rejecting

Defendant's post hoc rationale that obesity is per se remediable where there was no factual basis or findings of fact in the record to support such an argument).

As such Plaintiff's assignment of error is well taken, and this matter remanded for a new decision that adequately explains the weight accorded to the various medical sources of record in compliance with 20 C.F.R. § 404.927.

Plaintiff further contends that the ALJ improperly relied on VE testimony, improperly evaluated Plaintiff's education, and abused her discretion in conducting the hearing. The Court, however, will not address these issues as it has found remand is otherwise necessary.

Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Facer v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and proof of disability is compelling). When the ALJ misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and her decision therefore must be reversed, the appropriate remedy is not to award benefits. The Court, therefore, concludes that remand is required under "sentence four" of 42 U.S.C. § 405(g).[10]

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner should be vacated and the case remanded, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

                     s/ Greg White
                     United States Magistrate Judge

Date:    March 13, 2012

---

[10]Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

**OBJECTIONS**
Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**. *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**